The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 2, 2026

**2026 COA 55**

**No. 24CA1772, *People v. Ahmed* — Criminal Procedure — Discovery and Procedure Before Trial — Disclosure to Defense — Prosecutor's Obligations — Failure to Comply — Sanctions**

In this prosecutorial appeal of a district court's order imposing discovery sanctions, a division of the court of appeals considers — for the first time — whether a court errs by not giving a prosecutor an opportunity to oppose the imposition of sanctions premised on a finding that the district attorney's office engaged in a pattern and practice of failing to provide timely discovery to defense counsel. The division holds that the court abused its discretion by not providing such an opportunity. Therefore, it reverses the district court's dismissal of the charges against the defendant as a discovery sanction because the court did not allow the prosecutor any opportunity to address whether the district attorney's office

engaged in a pattern and practice of discovery violations or whether

dismissal was too severe a sanction.

COLORADO COURT OF APPEALS     **2026 COA 55**

Court of Appeals No. 24CA1772
City and County of Denver District Court No. 22CR3380
Honorable Eric M. Johnson, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Ahmad A. Ahmed,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

Announced July 2, 2026

John Walsh, District Attorney, Richard F. Lee, Senior Deputy District Attorney,
Denver, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1 District courts have the authority to impose sanctions on a district attorney's office that violates a defendant's due process rights by failing to provide mandatory discovery to the defense. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court announced that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

¶ 2 Rule 16 of the Colorado Rules of Criminal Procedure codifies *Brady*'s disclosure requirement. *People v. Bueno*, 2018 CO 4, ¶ 28, 409 P.3d 320, 326. Under Crim. P. 16(I)(a)(1), prosecutors must "make available to the defense . . . material and information which is within the[ir] possession or control . . . concerning the pending case." And Crim. P. 16(I)(a)(2) says that "[t]he prosecuting attorney shall disclose to the defense any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor."

¶ 3    In this prosecutorial appeal of a district court's order imposing discovery sanctions, we consider, for the first time in a reported case, whether a court must give a prosecutor an opportunity to oppose the imposition of sanctions premised on a finding that the district attorney's office engaged in a pattern and practice of failing to provide timely discovery to defense counsel.

¶ 4    We conclude that courts must provide prosecutors such an opportunity and therefore reverse.

## I.    Background

¶ 5    The Denver District Attorney's Office (the District Attorney's Office) appeals the district court's dismissal of all charges against Ahmad A. Ahmed as a sanction for the District Attorney's Office's failure to provide timely required discovery to Ahmed's counsel as part of a pattern and practice of discovery violations.

¶ 6    Ahmed allegedly stabbed two individuals.  According to the probable cause affidavit, after the stabbing, the victims threw rocks at Ahmed to keep him away.  The District Attorney's Office charged Ahmed with first degree attempted murder, second degree assault, third degree assault, second degree assault on an at-risk person,

and third degree assault on an at-risk person.  Ahmed asserted that he acted in self-defense.

¶ 7    After several continuances, Ahmed's trial was set for August 27, 2024, with a speedy trial deadline of November 14, 2024. Under Crim. P. 16(I)(b)(3), the prosecutor needed to disclose all required discovery to defense counsel no later than thirty-five days before trial.

¶ 8    But only six days before trial, the prosecutor provided the defense, for the first time, with recordings of five 911 calls.  Defense counsel raised the untimely discovery at a hearing conducted the day before the trial was scheduled to begin.

¶ 9    At the hearing, defense counsel informed the district court that one of the calls came from an eyewitness to the rock throwing, Connor Dixon, who told a 911 operator that Ahmed was the *victim*, not the assailant.  The prosecutor's prior discovery made no mention of Dixon.

¶ 10    Defense counsel said he promptly contacted Dixon, who "indicated . . . that he would be willing to testify . . . but . . . [would] be traveling . . . and obviously would not be available either to testify" or to be "interview[ed]" before the August 27 trial date.

Defense counsel advised the district court that he believed he would call Dixon as a witness, he could not "effectively represent [Ahmed] . . . without tracking down [Dixon]," and "the late disclosure ha[d] made it impossible for [defense counsel] to do that."

¶ 11    Defense counsel argued that the late disclosure violated the prosecutor's discovery obligations and requested sanctions. Due to the age of the case, defense counsel "ask[ed] the [c]ourt to consider dismissing the case" or, in the alternative, for "a reduction of charges." He opposed a continuance because Ahmed did not "wish . . . to ask" for one, but he added that, if the district court granted a continuance, the trial should be reset before the speedy trial deadline.

¶ 12    The prosecutor responded that the late disclosure did not violate Crim. P. 16 because defense counsel had not cited which provisions of the rule applied and, more generally, that the District Attorney's Office was not convinced that the untimely disclosure of the 911 recordings to the defense violated the rule. In addition, the prosecutor noted that Dixon was an eyewitness to the rock throwing but not to the earlier stabbings and that Dixon's testimony would be cumulative because another witness could testify about the rock

4

throwing. The prosecutor did not respond to defense counsel's request for specific sanctions.

¶ 13 The district court ruled from the bench that the untimely disclosure of the 911 calls violated Crim. P. 16 and Ahmed's due process rights. The district court added that the late disclosure did not "happen[] in a vacuum" because it was part of "a pattern of practice that ha[d] been occurring routinely . . . in many cases across th[e] jurisdiction." The district court cited two cases: "case 19CR6297," in which the prosecutor turned over photos of a crime scene "days before trial," and "case 20CR6669," in which the prosecutor turned over videos "a week before trial." (The court did not indicate whether courts had sanctioned the District Attorney's Office in those two cases, and the record does not refer to any other case in which the District Attorney's Office violated its discovery obligations.)

¶ 14 In its oral ruling, the district court dismissed the charges against Ahmed as a discovery sanction. The court acknowledged that dismissal was an "extreme sanction" but said that it was not feasible to continue the trial to a date before the November 14 speedy trial deadline because of the court's congested calendar.

5

The court did not offer to contact other courtrooms to determine whether another district court judge in the Second Judicial District had availability to try the case before the deadline. The court concluded, considering the age and nature of the case, as well as the District Attorney's Office's recurring pattern of late discovery, that dismissal was the appropriate sanction.

¶ 15    After the district court announced its ruling, the prosecutor objected to the dismissal, noting that defense counsel had not argued that the District Attorney's Office engaged in a pattern and practice of discovery violations. The prosecutor challenged the district court's pattern and practice finding and sanction of dismissal. The prosecutor noted that, in *People v. Tippet*, the supreme court held that reducing the charges was an appropriate sanction for more widespread discovery violations, including the district attorney's office's failure to disclose "thousands of pages of discovery" in more than twenty cases. *See* 2023 CO 61, ¶¶ 16-17, 26, 539 P.3d 547, 552-53. Based on *Tippet*, the prosecutor argued that the court should have imposed a less harsh remedy than dismissal.

¶ 16    The court responded that the prosecutor's argument

"sound[ed] like [the] opening paragraph for [his] appeal."  As the

district court anticipated, the District Attorney's Office appeals the

dismissal of the charges.

## II.    The Court Abused Its Discretion by Not Giving the Prosecutor an Opportunity to Address the "Pattern and Practice" Allegation

¶ 17    The District Attorney's Office does not contest the district

court's finding that the untimely disclosure of the 911 recordings

violated *Brady*, Crim. P. 16, and Ahmed's constitutional right to due

process.  Rather, the District Attorney's Office challenges the court's

finding that the failure to provide timely discovery in three cases

constitutes a pattern and practice, argues that the facts do not

support dismissing Ahmed's case, and asserts that the court failed

to give the prosecutor a sufficient opportunity to respond to the

pattern and practice allegation.  We agree that the court abused its

discretion by not giving the prosecutor a sufficient opportunity to

address the court's finding that the District Attorney's Office

engaged in a pattern and practice of discovery violations and its

subsequent determination that dismissing the case was warranted

7

based on that finding. We therefore reverse and remand the case for a new sanctions hearing.

¶ 18    Given our holding, we need not determine whether three cases can constitute a pattern and practice or whether the district court abused its discretion by dismissing the case.

## A.    Applicable Law and Standard of Review

¶ 19    Crim. P. 16(III)(g) allows a district court to impose sanctions against a party who "failed to comply with this rule" in the form of "grant[ing] a continuance, prohibit[ing] the party from introducing in evidence the material not disclosed[,] or enter[ing] such other order as it deems just under the circumstances."

¶ 20    "Choosing an appropriate sanction for discovery violations lies within the sound discretion of the trial court and will not be overturned absent an abuse of discretion." *Tippet*, ¶ 34, 539 P.3d at 554. We will, however, "reverse a trial court's imposition of discovery sanctions when they are 'manifestly arbitrary, unreasonable, or unfair,'" *id.* at ¶ 35, 539 P.3d at 554 (quoting *People v. Castro*, 854 P.2d 1262, 1265 (Colo. 1993)), or if the court misapplied the law, *People v. Grant*, 2021 COA 53, ¶ 12, 492 P.3d 345, 348.

## B. The Court Did Not Give the Prosecutor a Sufficient Opportunity to Be Heard Before Imposing Sanctions

¶ 21    In response to the District Attorney's Office's argument regarding the prosecutor's lack of an opportunity to address the pattern and practice issue, Ahmed argues that the District Attorney's Office did not identify any authority, "in *Tippet* or otherwise," requiring a court to give a prosecutor an opportunity to be heard before imposing sanctions for a discovery violation. We disagree that a court may make findings on a matter as significant as whether a district attorney's office engaged in a pattern and practice of discovery violations and, based on those findings, impose the most severe possible sanction for a discovery violation without first providing the prosecutor with a reasonable opportunity to challenge the pattern and practice allegation and the proposed sanction.

¶ 22    In *Tippet*, the district attorney's office in the Eleventh Judicial District contended that the court had not given the prosecutor an "adequate opportunity" to counter defense counsel's allegations of a pattern and practice of discovery violations. *Tippet*, ¶ 46, 539 P.3d at 557. In response, the supreme court did not hold that a district

attorney's office *has no right* to be heard before a court imposes sanctions for a pattern and practice of discovery violations. Instead, the supreme court noted that, in *Tippet*, the defense "moved for discovery sanctions and identified each of [the specified prior] cases as illustrative of the [district attorney's office's] pattern of neglect." *Id.* at ¶ 47, 539 P.3d at 557. Indeed, not only did the district attorney's office receive the defense's sanctions motion, but it responded to the motion by arguing that the cited cases were "too dissimilar to establish a pattern." *Id.*

¶ 23    Thus, the supreme court concluded that the district attorney's office "had notice and an opportunity to litigate whether the discovery violations in each of the twenty cases considered by the district court supported finding a pattern of neglect." *Id.* The supreme court therefore had no reason to address the issue presented here — whether a district court abuses its discretion by not allowing a prosecutor to address the basis for imposing the most severe possible discovery sanction before entering it.

¶ 24    Unlike the defense attorney in *Tippet*, Ahmed's counsel did not file a sanctions motion, much less a motion alleging an office-wide pattern and practice of discovery violations. Defense counsel never

even mentioned a pattern and practice of violations before the court ruled from the bench. Instead, the court raised the issue *sua sponte* in its bench ruling. As a result, the prosecutor had *no advance notice* that the court believed that the District Attorney's Office engaged in a pattern and practice of discovery violations or, based on that finding, that the court would impose the most severe possible discovery sanction.

¶ 25    Ahmed counters that the District Attorney's Office should be "aware of its cases that are being sanctioned for discovery violations." While we agree that a district attorney's office is on notice of the discovery sanctions imposed against it, in Ahmed's case — unlike in *Tippet* — the individual prosecutor had no opportunity to investigate or address the two other cases that the district court cited as evidence of the District Attorney's Office's pattern and practice. Notably, the record does not show that the prosecutor in this case knew about either prior case. And the record does not reveal whether a court imposed sanctions in those two other cases.

¶ 26    So we conclude that the district court abused its discretion by imposing sanctions based on a pattern and practice of discovery

violations without giving the prosecutor any opportunity to research and respond to that allegation before ruling. As a general practice, a court should not issue a ruling without first giving the adversely affected party an opportunity to address it. *See id.* at ¶¶ 46-51, 70, 539 P.3d at 557-58, 560 (holding that the court did not abuse its discretion by imposing sanctions when the district attorney's office was given notice and an opportunity to respond to defense counsel's allegations of a pattern of discovery violations); *cf. Raymond Lloyd Co. v. Dist. Ct.*, 732 P.2d 612, 615 (Colo. 1987) ("Due process principles require that at a minimum any person subject to proceedings that might result in the imposition of penal sanctions be afforded notice and an opportunity to be heard before imposition of a sanction.").

¶ 27 Because the prosecutor was not given an opportunity to be heard on whether the District Attorney's Office engaged in a pattern and practice of discovery violations or the appropriateness of a dismissal sanction premised on such a pattern and practice, we conclude that the district court abused its discretion by dismissing the charges against Ahmed. We therefore remand the case to the district court to conduct a new sanctions hearing after providing the

prosecutor with a reasonable opportunity to address whether the District Attorney's Office engaged in a pattern and practice of discovery violations and, if so, to impose "the least severe sanction that w[ould] ensure that there is full compliance" with the discovery rules. *Tippet*, ¶ 37, 539 P.3d at 555 (quoting *People v. Dist. Ct.*, 793 P.2d 163, 168 (Colo. 1990)).

### C.     The Dismissal Sanction

¶ 28     In light of our conclusion that the district court abused its discretion by dismissing Ahmed's charges without first allowing the prosecutor a reasonable opportunity to challenge the pattern and practice assertion and to argue what sanction, if any, was appropriate, we do not reach the District Attorney's Office's argument that the record does not support a dismissal sanction. Even if, on remand, the district court again determines that the District Attorney's Office engaged in a pattern and practice of discovery violations, the court's determination of an appropriate sanction is not likely to "arise in precisely the same posture" as it did at the August 26, 2024, hearing. *People v. Malcolm*, 2025 COA 95M, ¶ 39, 585 P.3d 240, 248 (quoting *People v. Gulyas*, 2022 COA 34, ¶ 29, 512 P.3d 1049, 1055). We express no opinion on an

appropriate sanction for the prosecutor's tardy disclosure of the 911 recordings.

## III.   Disposition

¶ 29    The judgment is reversed, and the case is remanded to the district court for a new sanctions hearing and further proceedings consistent with this opinion.

JUDGE YUN and JUDGE SCHUTZ concur.